# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HERBERT A. PIERRE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-0164** |
| **BURL CAIN, WARDEN** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.   Factual and Background

The petitioner, Herbert A. Pierre, Jr. ("Pierre"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On August 17, 2000, Pierre was charged by a Bill of Information in Jefferson Parish with one count of simple burglary of an inhabited dwelling owned

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

by Marilyn Williams, one count of armed robbery of Keokuk Wilson, and one count of armed robbery of Diane Martin.[3]

The record reflects that, at approximately 2:00 p.m. on July 3, 2000, Pierre entered the Regions Bank on Belle Chasse Highway, wearing black pants, a black hat and black sunglasses.[4] He waited in line and, when he approached the window of teller Keokuk Wilson, he told her that he wanted to make a withdrawal. Pierre put a blue Wal-Mart bag, which had something red inside, on the counter. He pulled up his shirt to reveal a gun tucked in his pants. Wilson began putting money into the bag at which time Pierre pulled out his gun, pointed it at her, and told her not to press any buttons. Unbeknownst to him, Wilson managed to press two buttons, one which activated a camera that took still pictures and another that called the police.

As Pierre was leaving the bank, Wilson told her colleagues that she had been robbed. Gary Laigast, an employee of Regions Bank, saw Pierre as he left the bank. Another employee indicated that she saw Pierre run across Belle Chasse Highway and over the railroad tracks. Laigast looked out of the window and saw Pierre on the other side of the railroad tracks changing out of his black shirt into a red shirt and changing his pants. Laigast got into his car and drove towards the field where he had seen Pierre. On a road near the field, Laigast watched Pierre walking, holding a bag in his hand. He was now wearing a red shirt and shorts. When Pierre saw Laigast, he ran and jumped across a canal. Laigast then saw Pierre jump over a fence and into the backyard of a house on Hickory Street. The house belonged to Marilyn Williams.

---

[3]St. Rec. Vol. 1 of 7, Bill of Information, 8/17/00.

[4]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Pierre*, 834 So.2d 1229, 1230-31 (La. App. 5th Cir. 2002); St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 02-KA-838, 12/30/02.

Williams was in her swimming pool doing exercises when the police arrived at her house. Williams allowed the police to search her home.  The police found Pierre hiding under a bed in the guest bedroom.  Pierre was now wearing a gray t-shirt with "Army" written across the front and gray sweat pants over a pair of shorts.  Williams testified that the gray shirt and sweat pants belonged to her.  She also stated she had last seen the shirt in a basket on top of the washing machine in the garage and the pants had been hanging in a closet in one of the spare rooms.  Approximately $8,000, the amount taken from the bank, was found in the left front pocket of Pierre's shorts.

Pierre admitted at trial that he went into the house on Hickory Street and hid under the bed. He claimed that he went into the house because he saw a man on the street with a gun and he feared for his life.  He denied that he had been in the Regions Bank on Belle Chasse Highway that day.

Pierre was tried for the simple burglary and the armed robbery of Wilson before a judge on September 26, 2001, and found guilty as charged on both counts.[5]  At a hearing held on October 23, 2001, the Trial Court denied Pierre's Motion for New Trial and Motion for Post Verdict Judgment of Acquittal.[6]  The State also entered a nolle prosequi as to Count 3 of the Bill of Information.

On October 24, 2001, the Trial Court sentenced Pierre to serve 12 years for the simple burglary count and 80 years for the armed robbery count.[7]  The Court denied Pierre's Motion to Reconsider Sentence.[8]

---

[5]St. Rec. Vol. 2 of 7, Trial Minutes, 9/26/01; St. Rec. Vol. 6 of 7, Trial Transcript, 9/26/01.

[6]St. Rec. Vol. 2 of 7, Minute Entry, 10/23/01; Motion for Post Verdict Judgment of Acquittal, 10/23/01; Order (Motion for Post Verdict Judgment of Acquittal), 10/23/01; Motion for New Trial, 10/23/01; Order (Motion for New Trial), 10/23/01; St. Rec. Vol. 6 of 7, Transcript of Motion Hearing, 10/23/01.

[7]St. Rec. Vol. 2 of 7, Sentencing Minutes, 10/24/01; St. Rec. Vol. 6 of 7, Sentencing Transcript, 10/24/01.

[8]*Id*.; St. Rec. Vol. 2 of 7, Motion to Reconsider Sentence, 10/24/01; Order, 10/24/01.

The State also filed a Multiple Bill related to the armed robbery conviction.[9]  On January 8, 2002, the Trial Court held a hearing on the Multiple Bill.[10]  Pierre refused to be fingerprinted and the Court held him in contempt.[11]  At the next hearing held January 15, 2002, Pierre again refused to be fingerprinted.[12]  The Trial Court found him to be in contempt and sentenced him to serve six months in parish prison to run consecutive to any other sentences imposed.  The Court also ordered that the fingerprints be taken at the prison prior to the next hearing.

On April 10 and 11, 2002, the Trial Court held hearings on the Multiple Bill.[13]  The Court found Pierre to be a multiple offender and denied his Motion to Dismiss the Multiple Bill.[14]  The Trial Court re-sentenced Pierre on April 12, 2002, on the armed robbery conviction to serve 80 years as a multiple offender without benefit of parole, probation, or suspension of sentence.[15]  The Court denied Pierre's Motion to Reconsider Sentence.[16]

---

[9]*Id.*; St. Rec. Vol. 2 of 7, Multiple Bill, 10/24/01.

[10]St. Rec. Vol. 2 of 7, Minute Entry, 1/8/02.

[11]*Id*.

[12]St. Rec. Vol. 2 of 7, Minute Entry, 1/15/02.

[13]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 4/10/02; Minutes of Multiple Bill Hearing, 4/11/02; St. Rec. Vol. 6 of 7, Transcript of Multiple Bill Hearing, 4/10/02.

[14]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 4/11/02; Motion to Dismiss Multiple Bill, 4/10/02; Order, 4/11/02.

[15]St. Rec. Vol. 2 of 7, Sentencing Minutes, 4/12/02; St. Rec. Vol. 6 of 7, Sentencing Transcripts, 4/12/02.

[16]*Id.*; St. Rec. Vol. 2 of 7, Motion to Reconsider Sentence, 4/12/02; Order, 4/12/02.

On appeal, Pierre's counsel argued that the sentences were excessive.[17]  On December 30, 2002, the Louisiana Fifth Circuit Court of Appeal affirmed Pierre's convictions and sentences.[18]  His request for rehearing was denied on February 3, 2003.[19]

Pierre filed a timely writ application in the Louisiana Supreme Court.[20]  The Court denied the application without reasons on October 17, 2003.[21]

Pierre's conviction became final 90 days later, on January 15, 2004, since he did not file a writ application with the United States Supreme Court.  *See Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)).

---

[17]St. Rec. Vol. 6 of 7, Assignment of Error, 02-KA-0838, 9/13/02; Appeal Brief, 02-KA-0838, 9/13/02; *State v. Pierre*, 834 So.2d 1229, 1230-31 (La. App. 5th Cir. 2002); St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 02-KA-838, 12/30/02.

[18]*State v. Pierre*, 834 So.2d at 1229; St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 02-KA-838, 12/30/02.  The Court also remanded the matter with instructions for the Trial Court to advise Pierre about the delays for seeking post-conviction relief.  The Trial Court complied on January 8, 2003.  St. Rec. Vol. 2 of 7, Letter to Plaintiff, 1/8/03.

[19]*Id.*

[20]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 03-KO-0508, 2/18/03 (post mark 1/28/03).  La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be made within 30 days of the issuance of the judgment.  *See also* La. Code Crim. Proc. art. 922(A).  Pierre's petition was filed February 18, 2003, and post marked January 28, 2003.  *Id.*; St. Rec. Vol. 1 of 7, La S. Ct. Letter, 2003-KO-0508, 2/18/03 (post mark 1/28/03).

[21]*State v. Pierre*, 855 So.2d 755 (La. 2003); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2003-KO-0508, 10/17/03.

II.    **Procedural Background**

On September 17, 2004, Pierre filed an Application for Post Conviction Relief with the Trial Court seeking two grounds for relief.[22]    The first ground for relief is that: (1) Counsel gave ineffective assistance because (a) he failed to object to Pierre's prison attire at the motion to suppress hearing on January 30, 2001;  (b) failed to properly cross-examine Wilson on her identification testimony at the trial on September 26, 2001; (c) failed to charge the court; (d) failed to properly cross-examine Laigast about the identification; failed to cross-examine Laigast on other grounds; (e) failed to object to photographic lineup introduced at trial that contradicted the witnesses' identifications; (f) failed to challenge Laigast's testimony; (g) failed to object to identification by Deputy Jones; and (h) failed to cross examine John Carroll.  His second ground for relief was that: (2) he was denied the right to confrontation where Laigast testified as to things seen by others, victim testimony regarding bank policy was not supported by evidence, and the simple burglary conviction was not based on the evidence presented.

The Trial Court denied the Application on September 29, 2004.[23]  The Court held that Pierre failed to prove either prong of the test in *Strickland v. Washington*, 466 U.S. 668 (1984), or establish a violation of the confrontation clause.

_____

[22]St. Rec. Vol. 3 of 7, Application for Post Conviction Relief, 9/17/04.

[23]St. Rec. Vol. 3 of 7, Order, 9/29/04.

Pierre sought timely review of the ruling from the Louisiana Fifth Circuit on October 27, 2004.[24]  The Court denied the Application finding no error in the Trial Court's ruling.[25]

Pierre filed a timely Writ Application with the Louisiana Supreme Court on December 12, 2004.[26]  Pierre raised two claims for review:  (1) ineffective assistance of counsel for failure to object to the photographic lineup introduced at trial and failure to adequately cross-examine Wilson's identification testimony; and (2) denial of the right to confrontation.  The Court denied the Application without reasons on November 29, 2005.[27]

In the meantime, on January 7, 2005, Pierre filed another Uniform Application for Post Conviction Relief with the Trial Court.[28]  Pierre alleged that his multiple offender adjudication was improper, the evidence was insufficient to support the armed robbery conviction, and his appellate counsel was ineffective for failure to raise these claims on appeal.

On November 11, 2005, the Trial Court denied the application as procedurally improper and successive pursuant to La. Code Crim. P. 930.4(E).[29]  The Louisiana Fifth Circuit also denied

---

[24]The record does not contain a copy of the Writ Application in Case No. 04-KH-1283.  The filing date appears on the face of the Court's subsequent order and has been confirmed with the Office of the Clerk of the Louisiana Fifth Circuit.  *See* St. Rec. Vol. 3 of 7, 5th Cir. Order, 04-KH-1283, 11/5/04.

[25]St. Rec. Vol. 3 of 7, 5th Cir. Order, 04-KH-1283, 11/5/04.

[26]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 04-KH-3166, 12/21/04 (post mark 11/18/04).

[27]*State ex rel. Pierre v. State*, 916 So.2d 154 (La. 2005); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2004-KH-3166, 11/29/05.

[28]St. Rec. Vol. 3 of 7, Uniform Application for Post Conviction Relief, 1/7/05.

[29]St. Rec. Vol. 3 of 7, Order, 1/11/05.

Pierre's subsequent Writ Application on February 11, 2005, finding no error in the Trial Court's ruling.[30]

Pierre filed a third Uniform Application for Post Conviction Relief with the Trial Court on February 28, 2005.[31]  He alleged that he was actually innocent because the identification evidence was insufficient, he was actually innocent because the evidence was insufficient to support the armed robbery conviction and appellate counsel was ineffective for failure to raise these claims on appeal.  The Trial Court denied relief finding that Pierre had failed to establish a basis for his actual innocence claim and for failure to establish ineffective assistance of counsel under the standards set forth in *Strickland*.[32]  Although Pierre filed a notice of intent, he did not seek review of this order.[33]

Instead, on April 4, 2005, Pierre filed his fourth Uniform Application for Post Conviction Relief alleging his actual innocence based on counsel's failure to bring proper evidence and prosecutorial misconduct in presenting perjured and false testimony.[34]  The Trial Court denied relief on April 6, 2005, finding the Application to be procedurally improper as successive pursuant to La. Code Crim. P. art. 930.4(D) and (F).[35]

---

[30]St. Rec. Vol. 4 of 7, 5th Cir. Order, 05-KH-134, 2/11/05.  The record does not contain a copy of this Writ Application.  The filing date of February 4, 2005, appears on the face of the order and was confirmed with the Office of the Clerk of the Louisiana Fifth Circuit.

[31]St. Rec. Vol. 4 of 7, Uniform Application for Post Conviction Relief, 2/28/05.

[32]St. Rec. Vol. 4 of 7, Order, 3/3/05.

[33]St. Rec. Vol. 4 of 7, Notice of Intent, 3/28/05; Order, 3/31/05.

[34]St. Rec. Vol. 4 of 7, Uniform Application for Post Conviction Relief, 4/4/05.

[35]St. Rec. Vol. 4 of 7, Order, 4/6/05.

The Louisiana Fifth Circuit denied Pierre's subsequent Writ Application on May 4, 2005, finding no error in the Trial Court's ruling.[36]   The Louisiana Supreme Court also denied his Writ Application to that Court without reasons on March 17, 2006.[37]

## III.   Federal Petition

On January 24, 2006, Pierre filed a Petition for Federal Habeas Corpus Relief raising three grounds for relief:[38] (1) counsel was ineffective at the January 30, 2001, hearing on the motion to suppress the identification for failure to object to the petitioner being in prison clothes for purposes of the in-court identifications; (2) counsel was ineffective at trial for failure to object to the inconsistent witness identification testimony and allowing the testimony to stand uncorrected on direct and cross examination; (3) counsel was ineffective for failure to object to the introduction of the photographic lineup at trial based on the inconsistent testimony related to his clothing.

The State filed an opposition memorandum alleging that Pierre failed to exhaust the third claim, and that the remaining claims were without merit.[39]   Pierre also filed a supplemental memorandum in response to the State's opposition.[40]

---

[36]St. Rec. Vol. 4 of 7, 5th Cir. Order, 05-KH-465, 5/4/05.  The record does not contain a copy of this Writ Application.  The filing date of May 2, 2005, appears on the face of the order and has been confirmed with the Office of the Clerk of the Louisiana Fifth Circuit.

[37]*State ex rel. Pierre v. State*, 925 So.2d 527 (La. 2006); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2005-KH-1633, 3/17/06; La. S. Ct. Writ Application, 05-KH-1633, 6/21/05 (post mark 5/18/05); St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 2005-KH-1633, 6/21/05 (post mark 5/18/05).

[38]Rec. Doc. No. 1.

[39]Rec. Doc. No. 10.

[40]Rec. Doc. No. 15.

**IV.**   **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[41] applies to Pierre's petition, which is deemed filed in this court under the federal "mailbox rule" on January 3, 2006.[42]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

On May 26, 2006, Pierre filed a Motion to Amend in which he requested that his petition be amended to exclude or strike the unexhausted third claim.[43]   The Court granted the motion on May 31, 2006.[44]   Because Pierre has withdrawn the unexhausted claim, and no other procedural defenses are presented, the Court will proceed with review of the two remaining claims, Claim Nos. 1 and 2.

---

[41]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.   *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).   The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.   Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[42]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.   Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of court filed Pierre's federal habeas petition on January 24, 2006.   Pierre dated his signature on the petition on January 3, 2006.   This is the earliest date on which he could have delivered it to prison officials for mailing.

[43]Rec. Doc. No. 13.

[44]Rec. Doc. No. 14.

**V.**     **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law and mixed questions of fact and law.  A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends

or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## VI.   <u>Ineffective Assistance of Counsel</u>

Pierre raises two instances of alleged ineffective assistance of counsel. First, he alleges that his trial counsel should have objected to the fact that he was wearing prison attire at the hearing on the motion to suppress the identifications. He also alleges that counsel was ineffective in his questioning and cross-examination of the State witnesses at trial.

Pierre raised these claims in his first Application for Post Conviction Relief. The Trial Court held that Pierre failed to establish the alleged actions were anything other than trial tactics or that counsel was ineffective under the standards of *Strickland*. The Louisiana Fifth Circuit and the Louisiana Supreme Court did not offer any additional reasons when denying subsequent relief in those courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

### A.  The *Strickland* Standard

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the

circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).  In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome."  *Id*.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

**B.      Failure to Object to Petitioner's Clothing at the Motion Hearing**

Pierre alleges that he was the only black male wearing orange prison clothing during the hearing on the Motion to Suppress the identifications on January 30, 2001. He was also seated next to defense counsel. He argues that this was prejudicial and suggestive for purposes of the in-court identifications made. He claims that counsel should have called for an independent physical line-up.

The United States Supreme Court has recognized that the Fourteenth Amendment dictates that a State can not compel an accused to stand trial before a jury while dressed in identifiable prison clothes where it furthers no essential state policy because it violates the right to a presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 505, 512-13 (1976). Even then, there is no per se rule invalidating every conviction in which a defendant was dressed in prison attire during trial especially where no objection is urged. *Id*. However, *Estelle*, and its progeny, does not apply where the defendant is tried without a jury, *see Scott v. Kaylo*, 2002 WL 1379187 (E.D. La. Jun. 26, 2002)

(Africk, J.), or where the trier of fact already knows that the defendant is incarcerated, *Estelle*, 425 U.S. at 507.

In this case, Pierre's claim arises out of his appearance at a pretrial motion hearing. There was no jury or impact on his ultimate guilt or innocence. The Court can find no protected right, or Supreme Court decree, prohibiting his presence at a pretrial motion hearing in prison clothing. *See United States v. Dailey*, 208 Fed. Appx. 344 (5th Cir. Dec. 8, 2006) (no reversible error from in-court identification by witness who saw defendant being led into court at prior pretrial hearing wearing prison clothes).

The purpose of the hearing was for the Trial Court to evaluate the suggestiveness, *vel non*, of the out-of-court identification process being challenged. Pierre has not demonstrated that he had a right to appear at the motion hearing in other clothing or that it prejudiced him at the non-jury trial held eight months later.

There was no basis in law for counsel to have made an objection to his clothing at the hearing on January 30, 2001. Counsel is not required to urge a claim that has no basis in law. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness), *cert. denied*, 525 U.S. 1174 (1999). Therefore, the denial of relief on this issue was not contrary to, or an unreasonable application of, established Supreme Court precedent. This claim is without merit.

### C.    Inadequate Questioning of the State's Witnesses at Trial

Pierre alleges that counsel should have done more than simply question Wilson and Laigast about their physical descriptions of the perpetrator. He claims that counsel should have objected or moved for dismissal because the descriptions clearly did not match Pierre's physical characteristics.

He also suggests that counsel did not force the state to prove a positive identification of him as the perpetrator. He also suggests that counsel failed to challenge the inconsistencies in the testimony of Detective Carroll regarding damage to the fence at the Williams's home and the finding of the money in his pocket. He also contends that counsel did not adequately challenge Deputy James's inconsistent testimony that Pierre was wearing gray shorts at the time of his arrest, where other witnesses said he was wearing gray sweat pants.

The Court first notes that it is not counsel's burden at trial to object to inconsistent testimony or to move for dismissal at every turn. It is counsel's role to question the witnesses in an effort to raise doubt in the minds of the trier of fact, in this case the state trial judge, who ultimately made the credibility determinations regarding the truth and consistency of that testimony. That being said, Pierre has failed to demonstrate a deficiency in counsel's performance at trial.

A review of the transcript reveals that counsel questioned each of the witnesses in detail about the descriptions given to police and the identifications made. With regard to Wilson's testimony, she was adamant about his mouth, teeth and the craters or scars on his face.[45] She also stated that she was sure that she would see them if she were closer to him at trial.[46] She also recognized his teeth.[47] She refused to get closer when counsel offered.[48] With that, counsel stated,

---

[45]St. Rec. Vol. 6 of 7, Trial Transcript, pp. 43, 47, 51, 9/26/01.

[46]*Id.*, at p. 52.

[47]*Id.*, at p. 53.

[48]*Id.*, at p. 51-52.

"[m]aybe we'll, at a later time, will have judicial – the Judge look it at a closer – he's going to be the trier of fact."[49]

When Pierre testified later at trial, he denied having any scars or marks on his face or unusual teeth.[50]  The Trial Court also had an opportunity to see him.[51]  In closing argument, counsel also states that he did not see scarring or pockmarks on Pierre's face or anything unusual about his teeth.[52]

Thus, having reviewed the transcript, counsel repeatedly challenged the physical characteristics which Wilson relied upon to make all of her identifications.  Counsel did not need to demonstrate any more than he did whether Pierre had this same scarring because the judge could see Pierre's face for himself.  Counsel's questioning in this regard was strategic and focused on challenging Wilson's identification of the man who robbed her.  Pierre has not shown a deficient performance.

In addition, Pierre inadvertently concedes that it was the skillful questioning by his counsel which led to Laigast's concession that he did not see the perpetrator's face or profile before the perpetrator left the bank.[53]  He saw only a back view as he left the bank.[54]  Counsel clearly was not deficient in doing exactly what Pierre expected him to do in challenging Laigast's testimony.

---

[49]*Id.*, at p. 52.

[50]*Id.*, at pp. 83, 84.

[51]*Id.*, at p. 83.

[52]*Id.*, at pp. 98-99.

[53]*Id.*, at pp. 30-31, 32-33.

[54]*Id.*, at pp. 29, 30.

Pierre also argues that counsel should have challenged Detective Carroll's testimony regarding damage to the fence at the Williams's home and the finding of the money in Pierre's pocket. Pierre suggests that counsel should have known this to be false testimony.

At trial, Carroll testified that he found the red shirt, discarded by Pierre, near a hole in the Williams's fence where boards had been kicked-in.[55] The prosecutor asked Carroll, "What type of evidence did you recover?"[56] Carroll answered simply "Cash money."[57] The money was wet and located in the pocket of his shorts.[58] Carroll also testified that, at the time he was found, Pierre was wearing a gray "Army" t-shirt and gray sweat pants over light colored shorts.[59] Carroll identified the shorts as those in evidence.[60] He also testified that the gray shirt and sweat pants were taken off of and seized from Pierre.

There is nothing in the record before the Court which conflicts with the statements made by Carroll. Pierre himself stated that, after taking off his wet shirt, he entered Williams' yard through a whole in the fence. Money was retrieved from his pocket. When he was arrested, he was wearing the gray t-shirt and gray shorts under the sweat pants he took from Williams. This was not inconsistent with the testimony of Deputy Jones or anyone else.

Pierre's manufactured discrepancies in Carroll's testimony are without support. Carroll's testimony is even consistent with Pierre's own testimony about going through the rotten boards of

---

[55]*Id.*, at p. 61.

[56]*Id.*, at p. 62.

[57]*Id.*

[58]*Id.*, at p. 63.

[59]*Id.*, at pp. at 63-64.

[60]*Id.*

the fence.[61]  With this, Pierre has failed to establish that counsel's questioning of Carroll was in any way deficient.

Pierre has failed to demonstrate a deficiency in counsel's performance or any prejudice from his thorough and pointed questioning of the State's witnesses at trial.  For the foregoing reasons, the state courts' denial of relief on this claim is not contrary to, or an unreasonable application of, *Strickland*.  Pierre is not entitled to relief on this claim.

**VII.    <u>Recommendation</u>**

For the foregoing reasons, it is **RECOMMENDED** that Herbert A. Pierre, Jr.'s petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____24th____ day of ____May____, 2007.

<u>KAREN WELLS ROBY</u>
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[61]*Id.*, at p. 82.